## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 4:15CR00001-1 BSM |
| | ) | |
| v. | ) | 18 U.S.C 666 §(a)(1)(B) |
| | ) | |
| MICHAEL A. MAGGIO | ) | |

## MOTION TO WITHDRAW PLEA OF GUILTY AND TO DISMISS INFORMATION

COMES NOW, the defendant, Michael A. Maggio ("Maggio"), by and through his undersigned counsel, James E. Hensley, Jr., and for his *Motion to Withdraw Plea of Guilty and to Dismiss Information* states as follows:

On January 9, 2015, Maggio agreed to waive indictment and plead guilty to an Information charging him with one count of federal program bribery in violation of 18 U.S.C § 666(a)(1)(B). Maggio respectfully requests to withdraw his plea of guilty because there is no factual basis for the plea and he has received ineffective assistance of counsel. Maggio further requests that the Court dismiss the *Information* because the government cannot establish that Maggio's conduct violated 18 U.S.C § 666(a)(1)(B) as a matter of law.

Therefore, for the reason set forth more fully in his *Brief in Support*, which is being filed contemporaneously herewith, Maggio respectfully requests that the Court grant his motion and dismiss this case.

Respectfully submitted,

/s/ James E. Hensley, Jr. 99069
HENSLEY LAW FIRM, P.A.
P. O. Box 11127
Conway, Arkansas 72034
501.327.4900 Fax: 501.400.7920
jehensley@centurytel.net

## CERTIFICATE OF SERVICE

I, James E. Hensley, Jr., certify that the forgoing instrument was filed with the Clerk of the Court using the CM/ECF system, which should send notification of all parties of record this **February 12, 2016.**

/s/ James E. Hensley, Jr.

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 4:15CR00001-1 BSM |
| v. | ) | |
| | ) | 18 U.S.C. § 666(a)(1)(B) |
| MICHAEL A. MAGGIO | ) | |

## BRIEF IN SUPPORT OF
## MOTION TO WITHDRAW PLEA OF GUILTY AND TO DISMISS INFORMATION

COMES NOW, the defendant, Michael A. Maggio ("Maggio"), by and through his undersigned counsel, and for his Brief in Support of Motion to Withdraw Plea of Guilty and to Dismiss Information states as follows:

### INTRODUCTION

On January 9, 2015, Maggio agreed to waive indictment and plead guilty to an Information charging him with one count of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B). Maggio respectfully requests to withdraw his plea of guilty because there is no factual basis for the plea and he has received ineffective assistance of counsel. Maggio further requests that the Court dismiss the Information because the government cannot establish that Maggio's conduct violated 18 U.S.C. § 666(a)(1)(B) as a matter of law.

### LEGAL ARGUMENT

I.     **Rule 11 standard for withdrawing a guilty plea.**

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure provides that a defendant may withdraw a plea of guilty after the court accepts the plea, but before it imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Although the defendant bears the burden of showing a "fair and just" reason, the standard has been described

by the Eighth Circuit as "a liberal standard." *United States v. Osei*, 679 F.3d 742, 746 (8th Cir. 2011) (internal citations omitted).

Further, before the Court grants a request to withdraw a plea, the Court must also consider the following: "whether the defendant asserts his innocence of the charge; the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Norvell*, 729 F.3d 788, 792 (8th Cir. 2013) (internal citations omitted).

## II.   Fair and just reasons exist for withdrawal of Maggio's guilty plea.

### A. Lack of a factual basis for the plea.

"Federal Rule of Criminal Procedure 11(b)(3) provides, '[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.'"  The purpose of Rule 11(b)(3) is "'to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Heid*, 651 F.3d 850, 854 (8th Cir. 2011) (*citing McCarthy v. United States*, 394 U.S. 459, 467, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969) (*quoting* Fed. Crim. P. 11 Advisory Comm. Notes (1966)).

In order for a guilty plea to be supported by an adequate factual basis, the record must contain "'sufficient evidence at the time of the plea upon which a court may reasonably determine that the defendant likely committed the offense.'" *Norvell*, 729 F.3d at 794 (internal citations omitted).   The court may consider the following evidence to determine whether there is an adequate factual basis for a plea:

- facts taken from the prosecutor's summarization of the plea agreement;
- the plea agreement itself;

2

- the plea colloquy between the defendant and the court;

- stipulated facts before the court; and

- facts set forth in the presentence report.

*See Norvell*, 729 F.3d at 794 (internal citations omitted).

When an adequate factual basis for a plea does not appear in the record, a "fair and just reason" for withdrawing a guilty plea exists. *See Heid*, 651 F.3d at 856. For example, in *Heid*, the defendant pled guilty to conspiring to launder money in violation of 18 U.S.C. § 1956(h), which requires as an element of the crime that the transaction at issue was "designed in whole or in part . . . to conceal or disguise" a particular attribute of the money. *Id.* at 855. The defendant attempted to withdraw her plea for the reason that there was no evidence that she knew the purpose of the transaction was to conceal or disguise a particular attribute of the money, but the district court denied her request. On appeal, the Eighth Circuit found that there was insufficient evidence in the record that the defendant "knew that the transaction [at issue] was 'designed in whole or in part . . . to conceal or disguise'" . . . . *Id.* Therefore, the Eighth Circuit reversed the district court as the defendant had shown a "fair and just reason" for withdrawing her plea. *Id.*

## 1. Elements required under 18 U.S.C. 666.

Maggio pled guilty to 18 U.S.C. § 666, which is entitled *Theft or bribery concerning programs receiving Federal funds*. Specifically, Maggio pled guilty to 18 U.S.C. § 666(a)(1)(B). To prove Maggio guilty under § 666(a)(1)(B), the government would have to show the following:

*One,* Maggio was an agent of an organization, agency or governmental unit;

*Two,* Maggio corruptly solicited/demanded or accepted/agreed to accept something of value *in connection with* the business, transaction or series of transactions;

*Three*, the business or transaction(s) involved something of value over $5,000; and

*Four*, the organization, agency or governmental unit received $10,000 or more in federal funds.

*See* Eighth Circuit Criminal Model Jury Instr. 6.18.666B.

As the Committee Comments to the Eighth Circuit's Criminal Model Jury Instructions note, "[s]ection 666 was 'designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies which are disbursed to private organizations or State and local governments pursuant to a federal program.'" *See* Eighth Circuit Criminal Model Jury Instr. 6.18.666 (Committee Comments). "The principal policy objective behind § 666 is to protect the integrity of the vast sums of money distributed through Federal programs." *Id.* (*quoting United States v. Rooney*, 986 F.2d 31, 34 (2d Cir. 1993)).[1]

Assuming, *arguendo*, that the government has established a factual basis for elements *One*, *Three* and *Four*, it is clear that the government has not, and cannot as a matter of law, establish element *Two*, *i.e.*, that Maggio accepted funds in connection with the business or transactions of the agency he represented, whether that be the State of Arkansas or any local government or agency thereof. As set forth more fully below, Maggio's alleged conduct in

---

[1]    Section 666 does not require that the government prove that the defendant actually misappropriated federal funds, or prove a connection between the offense conduct and the federal funds. *See United States v. Salinas*, 522 U.S. 52, 118 S. Ct. 469, 139 L.Ed.2d 352 (1997) and *United States v. Sabri*, 541 U.S. 600, 124 S. Ct. 1941, 158 L.Ed.2d 891 (2004). However, to face charges under § 666, the recipient of a bribe must be in a position where he or she could affect the expenditure of funds as the Supreme Court recognized in *Sabri* that § 666 is justified primarily by the need to protect federal spending. *See id.*, 541 U.S. at 606, 124 S. Ct. at 1946 (noting that § 666 was designed "to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery.").

4

accepting a bribe in order to issue a ruling in a civil case had no connection with or to the business of the State of Arkansas.

     **2.  Maggio's rulings were not "in connection with any business, transaction, or series of transactions" of any State, local or county government or any agency.**

A judge who accepts a bribe in exchange for a favorable ruling in a civil case cannot be convicted under section 666 as a matter of law. *See United States v. Whitfield*, 590 F.3d 325, (5th Cir. 2009); *United States v. Scruggs*, 2011 WL 1832769 (N.D. Miss. May 13, 2011); and *United States v. Frega*, 933 F.Supp.2d 1536 (S.D. Calif. 1996).

In *Whitfield*, Paul Minor, a formerly successful trial attorney, bribed two separate circuit court judges in exchange for favorable rulings in civil cases he had pending in each judge's court. A jury found both judges guilty under several criminal statutes, including 18 U.S.C. § 666. The judges challenged their convictions under § 666. The Fifth Circuit held that the judges' roles in rendering decisions in their civil cases had "no connection with any business, transaction, or series of transactions" of the state agency the judges represented and, therefore, the court reversed their convictions. *See Whitfield*, 590 F.3d at 347.

Specifically, in *Whitfield*, the government contended that the judges were agents of Mississippi's Administrative Office of the Courts (AOC).[2] The Fifth Circuit held that the "key

---

[2]     The judges in *Whitfield* were determined to be agents of Mississippi's AOC, "*but only in so far as they performed functions that involved AOC funds.*" *Id.*, 590 F.3d at 345. The court noted that, pursuant to Mississippi's statute, the purpose of the AOC in Mississippi is to "'assist in the efficient administration of the *non judicial* business of the courts of the state." *Id.*, 590 F.3d at 344 (internal citation omitted) (Arkansas's AOC has a similar purpose) (*See* Ark. Code Ann. § 16-10-102)). Because the judges' roles in their respective civil cases involved the judicial business of the courts of the state, as opposed to the nonjudicial business of the courts of the state, their judicial decisions were not connected with the business of the state and, therefore, § 666 was not implicated. *Id.* at 346. In this case, the government alleges that Maggio was an agent of the State of Arkansas, Twentieth Judicial District, however, it is not clear that the Twentieth Judicial District is an organization or state or local governmental unit. State

issue" in determining whether the judges could be held liable under section 666 was whether the judge's decisions "were connected with the transactions or business of the AOC." *Id.* The court found that it was clear from the record in that case that, although the judges were agents of the AOC, "their role as [agents of the AOC] . . . had nothing to do with their capacity as judicial decisionmakers." *Whitfield*, 590 F.3d at 346. The court noted that there could be situations where § 666 would be implicated when a judge accepts a bribe, *e.g.,* if an attorney bribed a judge "in exchange for their appointment of a friend or family member as a law clerk or secretary" as such would be in connection with the business or transactions of the AOC. *Id.* [3] Because the bribes that the judges accepted in *Whitfield* were in conjunction with the handling of their civil cases and "clearly had no 'connection with any business, transaction, or series of transactions' of the AOC," their convictions under § 666 could not stand. *Id.*

In *Scruggs*, an indictment charged a trial attorney with a violation of several criminal statutes, including 18 U.S.C. § 666. [4] The factual basis for the federal program bribery charge in *Scruggs* was that the attorney had attempted to bribe a judge to influence him in connection with a pending civil case. *See id.,* 2011 WL 1832769 at *14. The district court, relying on *Whitfield*,

---

government is the sole funding source for the Arkansas AOC, and the salaries and expenses for circuit court judges, court reporters and trial court assistants. Thus, while Maggio may have been an agent of the State of Arkansas, or the Arkansas AOC for the purpose of hiring court reporters and trial court assistants, it is clear that his conduct in this case had no relation whatsoever to the business or transactions of the State of Arkansas or any agency thereof.

[3]   *See, e.g., United States v. Castro,* 89 F.3d 1443 (11th Cir. 1996) and *United States v. Massey,* 89 F.3d 1433 (8th Cir. 1996) (cases involving convictions that were upheld where evidence established that attorneys paid kickbacks to a judge with the intent to have the judge appoint them as public defenders and authorize compensation to the attorneys paid out of government funds).

[4]   In *Scruggs*, the lawyer/defendant eventually pled guilty to misprision of a felony under 18 U.S.C. § 4, which criminalizes the concealment of a felony. One of the felonies the defendant was accused of committing was federal program bribery under 18 U.S.C. § 666. Thus, the court undertook to determine if the defendant actually committed federal program bribery.

found that the connection between the bribe and the business of the agency the judge represented (the Mississippi courts) was "lacking" and, therefore, "no reasonable juror, properly instructed, could find [the defendant] guilty. . . ." *Id.* This, according to the district court, constituted "actual innocence" of the § 666 charge *Id.*

In *Frega*, two state court judges were indicted for, *inter alia*, conspiracy to commit federal program bribery in violation of 18 U.S.C. § 666. In *Frega*, attorneys allegedly bribed a judge in order to influence him in the cases he presided over. The court found that no connection existed between the bribes and the business of the state and dismissed the indictment against the defendants as to the § 666 charge. *Id.*, 933 F. Supp. at 1543.

When the Court reviews the evidence to determine whether there is an adequate factual basis for Maggio's plea in this case, it will become clear to the Court that the government has not even alleged, much less established, a factual basis for Maggio's plea of guilty to violation 18 U.S.C. § 666(a)(1)(B). The Information charges Maggio with federal program bribery alleging that he accepted a bribe "intending to be influenced and rewarded in connection with a business, transaction, and series of transactions *of the State of Arkansas, Twentieth Judicial District, Second Division,* that involved $5,000 or more." (Doc. 2, pg. 2) (emphasis added).

It is clear, however, from the plea agreement and the plea colloquy that the only fact that the government has established to prove that Maggio is guilty of a § 666 violation is that he accepted a bribe intending to be influenced in granting a remittitur in a civil case. Like the defendants in *Whitfield, Scruggs* and *Frega*, there is no connection with any business of the State of Arkansas, Twentieth Judicial District or any agency thereof.

7

Indeed, at the plea hearing the following colloquy occurred[5]:

THE COURT: Okay.  And,  Ms. Peters, would you state for the record what facts you would prove if we were to have a trial in this case?

MS. PETERS: Yes,  Your Honor.   And these facts are intended to cover the elements of the crime that are in paragraph 2 of the plea agreement.

* * *

On or about June 27, 2013, Maggio formally announced his candidacy for the Arkansas Court of Appeals for the nonpartisan general election to be held May 20, 2014.  On or about June 29, 2013, at approximately 8:15 a.m., Individual B sent Maggio a text message stating in part, quote, Well your first 50K is on the way, end quote.  Maggio understood that this $50,000 included financial support from Individual A.

Between   on or about  June  29, 2013, and on or about  July 8, 2013, Individual B communicated to Maggio stating, in essence: Win, lose or draw, you have Individual A's support, end quote, referring to Maggio's decision on the motion for new trial or remittitur.  Maggio understood that the purpose of this message was not to reassure Maggio that he had Individual A's support regardless of any decision on the remittitur, but rather Individual B was reminding Maggio to make a favorable ruling to Individual A and Company A because of Individual A's financial support of Maggio's campaign.  At another time, Individual B reminded Maggio that he would receive campaign financial support if he made the, quote, touch calls, end quote, while on the bench.  Maggio understood that

---

[5]   Only the relevant excerpts of the plea colloquy are restated herein.   A copy of the entire transcript from the plea hearing is attached hereto as Exhibit "A."

Individual B was advising Maggio that, in exchange for Maggio's ruling in favor of Company A and Individual A, Individual A would provide campaign donations to Maggio.

On or about July 8th, 2013, during the early afternoon, Maggio held a hearing on Company A's pending post-verdict motions, including the motion for remittitur.   On or about July 10th, 2013, Maggio signed an order denying Company A's motion for new trial, but granting Company A's motion for remittitur.  Maggio reduced the judgment against Company A from 5.2 million to $1 million.

* * *

Maggio granted the remittitur in part because Maggio wanted to retain Individual A's financial support of his campaign for the Court of Appeals. Maggio accepted Individual A's financial support of his campaign for the Arkansas Court of Appeals intending to be influenced and induced to remit the judgment against Company A.

* * *

Finally, Maggio agrees that the facts described in this paragraph are included for the purpose of establishing a factual basis for his plea, but do not include all of the facts and information known by Maggio about these events and acts.

And, Your Honor, I neglected to mention before, one of the stipulations is the United States agrees to recommend a sentence within the guidelines range, understating that that's not binding on the Court.

9

THE COURT: I understand.

Mr. Maggio, did you listen to the statements given by the U.S. Attorney?

THE DEFENDANT:  Yes, sir.

THE COURT: Were her statements accurate?

THE DEFENDANT:  Yes, sir.

(Transcript from Plea Hearing, January 9, 2015 at p. 16-22).

There are no facts in the Information, the Plea Agreement, the plea colloquy or any other document to establish that Maggio accepted $50,000 from Individual A "intending to be influenced or rewarded in connection with any business, transaction or series of transactions" of the State of Arkansas, Twentieth Judicial District.  Therefore, under the plain language of section 666(a)(1)(B), and the holdings of *Whitfield*, *Scruggs* and *Frega*, the Court should find that no factual basis exists for Maggio's plea of guilty and that a "fair and just" reason exists for allowing him to withdraw his plea.

### B.  Maggio received ineffective assistance of counsel.

"Defense counsel's performance can serve as the requisite 'fair and just reason' for withdrawal only if [the defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." *Norvell*, 729 F.3d at795 (internal citations omitted). This is a two-part test. *See id.*  To establish the first prong, defendant "must show his counsel's 'representation fell below an objective standard of reasonableness.'"  *Id.* (internal citation omitted).  To establish the second prong, defendant must establish "'that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *U.S. v. Cruz*, 643 F.3d 639, 642 (8th Cir. 2011) (internal citation omitted).

Here, Maggio's previous counsel incorrectly informed defendant that his conduct violated 18 U.S.C. § 666 and improperly advised him to plead guilty when it is clear, as set forth above, that his conduct clearly does not violate § 666. Defendant acknowledges that he did not object to his counsel's representation of him at the plea hearing, but he was unaware at the time that the conduct he admitted to did not subject him to § 666.

Therefore, the Court should find, as an additional "fair and just" reason for withdrawal, the fact that Maggio received ineffective assistance of counsel in connection with his plea of guilty in this case.

### C. Maggio asserts that he is innocent of the charge.

Maggio asserts that he is innocent of the charge brought against him and that he did not corruptly solicit or demand, or accept or agree to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of the State of Arkansas, the Twentieth Judicial District, Second Division or any other state or local government or agency thereof. He also asserts that he did not solicit or accept anything of value in order to be influenced to remit the judgment in his civil case and only admitted that he did because he was pressured by his previous counsel and threatened by the U.S. Attorney with the indictment and prosecution of his wife.

### D. The government will not be prejudiced by the withdrawal of the guilty plea.

The remaining two factors that the Court should consider in determining whether to allow Maggio to withdraw his guilty plea is the length of time between the plea and the present motion to withdraw and the prejudice to the government if the withdrawal is permitted. *See Norvell*, 729 F.3d at 792. Maggio concedes that the length of time between his guilty plea (January 9, 2015) and the present motion is significant, but he asserts that two factors must be taken into

consideration.  First, Maggio's previous counsel was providing him with ineffective assistance in no understanding these important legal issues and providing him with erroneous legal advice about his conduct in this case.  Thus, it was not until Maggio obtained new counsel that he fully understood and appreciated the legal issues in this case.  Second, the government has been the party seeking to continue the sentencing in this case and no prejudice can be shown by the government if the plea is withdrawn.  Indeed, if the Court permits Maggio to withdraw his plea, then the Court should also dismiss the Information because, as set forth below, the government cannot prove that Maggio violated 18 U.S.C. §666 and, therefore, this entire case should be dismissed.

## II.     The Information must be dismissed.

The only charge in the Information against Maggio is for federal program bribery under 18 U.S.C. §666.  As set forth above, the government cannot establish that Maggio's conduct subjects him to a violation of §666.  Therefore, the Information must be dismissed.  *See Frega*, 933 F.Supp.2d at 1548 (granting dismissal of indictment as to the §666 charge because conduct alleged did not implicate §666).

Respectfully submitted,

/s/ James E. Hensley, Jr. 99069
HENSLEY LAW FIRM, P.A.
P. O. Box 11127
Conway, Arkansas 72034
501.327.4900 Fax: 501.400.7920
jehensley@centurytel.net

## <u>CERTIFICATE OF SERVICE</u>

I, James E. Hensley, Jr., certify that the forgoing instrument was filed with the Clerk of the Court using the CM/ECF system, which should send notification of all parties of record this **February 12, 2016.**

<u>/s/ James E. Hensley, Jr.</u>

# EXHIBIT A

1

1    IN THE UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF ARKANSAS
2              WESTERN DIVISION

3    UNITED STATES OF AMERICA,

4         Plaintiff,

5    v.                              No. 4:15CR00001-01 BSM

6                                    January 9, 2015
                                     Little Rock, Arkansas
7                                    11:24 a.m.
     MICHAEL A. MAGGIO,
8
          Defendant.
9

10            **TRANSCRIPT OF CHANGE OF PLEA HEARING**
              BEFORE THE HONORABLE BRIAN S. MILLER,
11                UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   On Behalf of the Government:

14       MS. JULIE E. PETERS, Assistant U.S. Attorney
            United States Attorney's Office
15          Eastern District of Arkansas
            425 West Capitol Avenue, Suite 500
16          Post Office Box 1229
            Little Rock, Arkansas  72203-1229
17

18   On Behalf of the Defendant:

19       MS. MARJORIE E. ROGERS, Attorney at Law
         MS. LAUREN HAMILTON, Attorney at Law
20          Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd.
            Post Office Box 5551
21          North Little Rock, Arkansas  72119-5551

22

23   Defendant present.

24

25       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
     transcription.


              Judith A. Ammons, RPR, CRR, CCR
              United States Court Reporter

2

1               P R O C E E D I N G S

2          THE COURT:  All right.  The only case I have on the

3     docket today is the case of United States of America versus

4     Michael Maggio.  The case number is 15CR01.  Mr. Maggio is in

5     the courtroom with his lawyers Lauren Hamilton and Marjorie

6     Rogers.  And the United States is being represented by Julie

7     Peters and Edward Sullivan. (sic)

8          Are we ready to proceed?

9          MS. PETERS:  Yes, Your Honor.

10          MS. ROGERS:  Yes, Your Honor.

11          THE COURT:  All right.  Ms. Rogers, would you please

12     bring Mr. Maggio forward?

13          Mr. Maggio, before we get started, would you raise your

14     right hand and get sworn in?

15          **MICHAEL A. MAGGIO, DEFENDANT, DULY SWORN**

16          THE COURT:  All right.  Mr. Maggio, before we get

17     started, I need a little background information.  First, how

18     old are you?

19          THE DEFENDANT:  53.

20          THE COURT:  And normally I would ask people how much

21     education that they have, but I'm aware that you have more than

22     a high school education.

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Have you had any drugs or medication or

25     any type of alcohol or anything that would make it difficult

Judith A. Ammons, RPR, CRR, CCR
United States Court Reporter

3

1  for you to understand what we're doing here today?

2          THE DEFENDANT:  No, sir.

3          THE COURT:  Do you know why you're in the courtroom

4  today?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  And, Ms. Rogers, have you had a chance to

7  speak with Mr. Maggio today?

8          MS. ROGERS:  Yes, Your Honor.

9          THE COURT:  Is he competent to go forward with the

10 plea?

11         MS. ROGERS:  Yes, Your Honor.

12         THE COURT:  All right.  I find the defendant, Michael

13 Maggio, is competent to go forward with the plea.

14     And, Mr. Maggio, are you satisfied with the legal

15 representation you have received so far from Ms. Rogers?

16         THE DEFENDANT:  Yes, sir.

17         THE COURT:  And having been a state court judge,

18 normally I would go through this long list of things "do you

19 understand" with you.  And I think I'll still do that because

20 some of the procedures in federal court are a little different

21 than state court.  I know in state court we cannot charge --

22 well, we could charge by information and we did it routinely.

23 In the federal court, we can't do that unless the defendant

24 agrees to waive indictment.  And so I'll go through that

25 process with you, although I'm pretty sure that you know what

1    the process is.

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  Here the government wants to proceed

4    against you, Mr. Maggio, by information.  And you understand

5    that in the federal system, for me to proceed, you'll have to

6    waive indictment.  And normally what would happen in an

7    indictment or to receive an indictment, what the government

8    would have to do is take your case to a grand jury.  And a

9    grand jury consists of at least 16, but not more than 23

10   persons, and at least 12 of those grand jurors would have to

11   decide that there's probable cause to bring the case against

12   you in order to issue the indictment.

13           And as you know, the grand jury could look at the

14   information that's presented and decide that there is not

15   enough information to indict you.  The grand jury could look at

16   it and decide there is enough information to indict you on the

17   charge that's being brought.  Or the grand jury could look at

18   it and say, "We don't have enough information on that charge,

19   but we might have information on something else."

20           Here I have a copy of the information, and I will only

21   read Count 1.  I'm not going to read the general allegations

22   here.  And I'm sure you've read through it, but here's what the

23   government intends to -- the count that it intends to bring

24   against you.

25           It says that:  In each calendar year -- each of the

1   calendar years 2013 and 2014, the State of Arkansas,

2   Twentieth Judicial District received in excess of $10,000 from

3   the United States government under federal programs involving

4   grants, subsidies, loans, guarantees, insurance, and other

5   forms of assistance.

6           From in or about February 2013 and continuing until in or

7   about mid-2014, in the Eastern District of Arkansas and

8   elsewhere, Michael A. Maggio, defendant herein, an elected

9   circuit judge for the State of Arkansas, Twentieth Judicial

10  District, Second Division, a part of the judicial branch of

11  government for the State of Arkansas, did knowingly and

12  corruptly solicit and demand for his own benefit and the

13  benefit of others, and accept and agree to accept, a thing of

14  value from Individual A, which was defined above, that is,

15  campaign contributions, provided through an intermediary, that

16  is, Individual B, that was defined above, for Maggio and his

17  campaign intending to be influenced and rewarded in connection

18  with a business, transaction, and series of transactions of the

19  State of Arkansas, Twentieth Judicial District, Second

20  Division, that involved $5,000 or more.

21          Now, that's what the government intends to charge you

22  with.  Do you wish to waive indictment?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Okay.  And have you discussed waiving

25  indictment with Ms. Rogers?

                    Judith A. Ammons, RPR, CRR, CCR
                    United States Court Reporter

1        THE DEFENDANT:  Yes.

2        THE COURT:  Okay.  And do you understand your right to

3   go to the grand jury?

4        THE DEFENDANT:  Yes.

5        THE COURT:  And have any threats or promises been made

6   against you, Mr. Maggio, to get you to waive indictment?

7        THE DEFENDANT:  No.

8        THE COURT:  And, Ms. Rogers, have you had a chance to

9   speak with Mr. Maggio about this?

10        MS. ROGERS:  Yes, Your Honor.

11        THE COURT:  Do you know of any reason why he should

12   not waive indictment?

13        MS. ROGERS:  No, Your Honor.

14        THE COURT:  All right.  And do you have the waiver

15   form?

16        MS. ROGERS:  Yes, Your Honor.  May I approach?

17        THE COURT:  Yes.  Thank you.

18     All right, Mr. Maggio, we'll proceed on the information.

19   Now, I know that you know what all of your rights are, Mr.

20   Maggio, but I'm going to go through those again with you -- or

21   I'm going to go through those with you just so we have a record

22   that you understand what your rights are.

23        You understand that the government wants to charge you --

24   or has charged you by information, and you waived indictment,

25   and I've read the information to you.  Now, you understand that

1    you don't have to plead guilty to that information.  You have a

2    right to go to trial.  You have a right to a speedy and public

3    jury trial.  You have a right to be represented by a lawyer.

4    If you can't afford one, we will appoint one to represent you.

5    And you understand all of these rights as well as anybody else:

6    That you would have a right to come in this courtroom, and the

7    government would have to present the case to the jury.  And the

8    jury would have to -- and you would enter the courtroom with

9    the presumption of innocence.  Ms. Peters over there would have

10   to prove the case against you beyond a reasonable doubt.  And

11   you know all the ways that the government would attempt to

12   prove the case.  They'd have witnesses, they'd have documents

13   or other things that they'd bring into court and present to the

14   witnesses.

15        You would have a right to confront those witnesses and

16   that evidence.  And the way you would do it is Ms. Rogers would

17   cross-examine the witnesses, and she would object to the

18   evidence that's presented against you.  You have a right to be

19   free from self-incrimination.  And as you understand that, the

20   government can't come in here and put you on the witness stand.

21   Ms. Rogers can't make you testify.  I can't make you testify.

22   That's your choice alone.  But if you chose to testify, you

23   could.

24        Now, once the government has put on its case, then you

25   have decisions to make, of course, whether you want to call

1   witnesses yourself.  And you would have a right to call them.

2   If you wanted to testify -- like I said, you don't have to.

3   You don't have to prove or disprove anything.  The government

4   has to prove the case against you.  But if you wanted to

5   testify, you could.

6       Now, if you chose not to testify, I would instruct the

7   jury that they can't use that against you.  And what I've

8   found, which is something you've probably found when you were

9   trying cases, is that juries tend to take that seriously.  When

10  they are told, "You can't use that against the defendant," they

11  generally don't do it.

12      And so they would go back there after hearing all of the

13  evidence, and then they'd just decide whether the government

14  has proved the case against you.  You've seen that in action

15  before.

16      If the jury determined that the government proved the

17  case, the jury would find you guilty.  And if the jury

18  determined that the government did not prove the case, it would

19  find you not guilty.

20      Now, if you're found not guilty, as you know, your case is

21  over.  The government can't bring the case against you under

22  this set of facts.  If the jury finds you guilty, then you have

23  a right to an appeal.  And in the Eastern District, your case

24  would go to three judges either sitting in St. Louis or St.

25  Paul, Minnesota.  And, as you know, they would not take new

1    evidence.  All they would do is look at the record to see if I

2    made any mistakes that caused you to lose.  In the law that's

3    called error, as you know.  If it's determined that I committed

4    an error, they would send it back down here and we'd try it

5    again.  If they determined that I did not commit an error, your

6    case would be affirmed and it would be over.

7         Now, you understand all of those rights, don't you?

8              THE DEFENDANT:  Yes, sir.

9              THE COURT:  And you understand that by pleading

10   guilty, it will cause some other problems for you, Mr. Maggio.

11   It will cause you to lose certain valuable civil rights like

12   the right to vote, the right to own a firearm, and the right to

13   hold public office.  Do you understand that?

14             THE DEFENDANT:  Yes, sir.

15             THE COURT:  And one thing I'll bring to your

16   attention, you know how in state court if you are found guilty

17   of a crime, after so long you can come back and have your

18   record expunged or sealed.  Well, in the state -- in the

19   federal system, we don't have an expungement law.  And so by

20   pleading guilty, this will go on your record.  Unless Congress

21   passes a law that allows me to do it, I cannot expunge your

22   record or seal it at any point.  This will stay on your record

23   for good.  Do you understand that?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  Okay.  Now, have you had a chance to speak

1    with Ms. Rogers about the possible sentence you could receive?

2            THE DEFENDANT:  Yes, sir.

3            THE COURT:  And so she's probably explained to you

4    that, unlike the state system, in the federal system, we have

5    our law that tells me what the minimum and maximum sentences

6    are that I can give you.  I have to give you a sentence within

7    the range provided by the law.  But in addition to the law, we

8    have sentencing guidelines.  And this is what's a little

9    different than the state.  I'm not required to give you a

10   sentence within the range provided by the guidelines as long as

11   I give you a sentence within the range provided by the law.

12   The guidelines are truly that, a guide, the starting point in

13   determining what an appropriate sentence is.

14           Now, I can't sit here as we stand here -- or as you stand

15   here and tell you what your sentence will be or what your

16   penalty will be.  What I can tell you is, based on the law, the

17   penalty for bribery concerning programs receiving federal funds

18   is not more than ten years of imprisonment, a fine of not more

19   than $250,000, or twice the pecuniary gain or loss, and that

20   says pursuant to 18 U.S.C. Section 3571(d), and not more than

21   three years of supervised release.  You'll also have to pay a

22   $100 special assessment.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Now, with regard to the sentencing

25   guidelines, what will happen is probation will go out and do a

1     presentence investigation, will look into your background and

2     determine whether there are any priors or anything like that in

3     your background.  And I don't expect there to be any in this --

4     under these circumstances, but she'll still look.  And what

5     she'll do is she'll come back and she'll prepare a presentence

6     report that will have your sentencing guidelines range in it.

7     But just understand that once she makes that determination,

8     just because you see what the guidelines range is, don't rely

9     on it because I can go above or below the guidelines range

10    depending on all of the information I receive in your

11    presentence report.  Do you understand that?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  Okay.  Now, if I were to give you a

14    sentence longer than what you expect or higher than the

15    guidelines range, you know you can't withdraw your plea of

16    guilty?  Do you understand that?

17              THE DEFENDANT:  Yes, sir.

18              THE COURT:  Okay.  And do you understand that we don't

19    have parole in the federal system, so if you end up getting

20    some prison time, you won't get out early on parole?  Do you

21    understand that?

22              THE DEFENDANT:  I understand.

23              THE COURT:  Okay.  Now, I understand there is a plea

24    agreement, and is that the case?

25              MS. ROGERS:  Yes, Your Honor.

1    THE COURT:  Now, Ms. Rogers, do you have the agreement

2 with you, or do you want me just to have the prosecutor get up

3 and tell me what the terms of the agreement are?

4    MS. ROGERS:  I do have a copy in front of me.  Ms.

5 Peters does have the original and the copies.

6    THE COURT:  That's fine.

7 Ms. Peters, would you tell me what the basic terms of the

8 agreement are?

9    MS. PETERS:  Yes, Your Honor.  The basic terms of the

10 agreement are that the defendant will plead guilty to 18 U.S.C.

11 Section 666(a)(1)(B).  The elements of the crime are listed out

12 in paragraph 2 of the plea agreement.  Your Honor has reviewed

13 the statutory penalties with the defendant.  There is an

14 appellate waiver in the plea agreement.  There are also a

15 number of stipulations in the plea agreement that include the

16 parties' best estimate on what the defendant's range will be

17 under the sentencing guidelines, understanding, of course, that

18 it's not binding on the Court.  Those stipulations are set

19 forth in paragraph 5.  And in paragraph 5F, there is a factual

20 stipulation agreed by the parties of what the government would

21 prove, which I'll review when Your Honor is ready for me to do

22 so.  The only other thing that I would note that's in here is

23 restitution will be determined by the Court, if any.

24    THE COURT:  Okay.  Mr. Maggio, did you listen to the

25 statement --

13

1      Well, first, Ms. Rogers, was there anything else you

2  wanted to add?

3      MS. ROGERS:  Your Honor, Ms. Peters has stated that

4  there was an appellate waiver.  My client does reserve the

5  right to appeal the sentence if it's imposed above the

6  guideline range.

7      MS. PETERS:  That is correct, Your Honor, and there's

8  also a reservation of right to appeal any restitution order.

9      THE COURT:  I understand.

10      And, Mr. Maggio, did you listen to the statements given by

11  the U.S. Attorney and Ms. Rogers?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  Were those the terms of the plea agreement

14  you understood?

15      THE DEFENDANT:  Yes, sir.

16      THE COURT:  Okay.  And I just had an Eighth Circuit

17  opinion come down which I handed out a sentence and it was

18  appealed.  And the defendant -- well, the government moved to

19  have it dismissed because of the appeal waiver.  Now, the

20  Eighth Circuit affirmed the sentence, but said that I didn't

21  spend enough time making sure that the defendant understood

22  that there was a waiver in the agreement, and therefore denied

23  the motion to dismiss the appeal.

24      And so I will ask -- I thought I had spent some time on

25  it, but I don't know how much time I'm supposed to spend.  But

1    that's what happens with the appellate judges sometimes.

2              THE DEFENDANT:  I understand that.

3              THE COURT:  Ms. Peters?

4              MS. PETERS:  Would Your Honor like me to read the

5    provision on the appellate waiver?

6              THE COURT:  Just read it just so we have a record that

7    he knows what it is.

8              MS. PETERS:  And, Your Honor, this is contained in

9    paragraph 4A:  The defendant further understands that by

10   entering into this agreement and addendum, he is waiving

11   certain constitutional rights, including, without limitation,

12   the following:  The right to appeal or collaterally attack, to

13   the full extent of the law, the conviction and sentence

14   imposed, including any forfeiture or restitution order, as

15   follows:

16        (1) the defendant waives the right to appeal the

17   conviction and sentence directly under Title 28 United States

18   Code Section 1291 and/or Title 18 United States Code Section

19   3742(a), including any issues that relate to the establishment

20   of the guideline range, except that the defendant reserves the

21   right to appeal claims of prosecutorial misconduct and the

22   defendant reserves the right to appeal the sentence if the

23   sentence imposed is above the guideline range that is

24   established at sentencing;

25        (2) the defendant expressly acknowledges and agrees that

1  the United States reserves its right to appeal the defendant's

2  sentence under Title 18 United States Code Section 3742(b) and

3  *United States v Booker*, 543 U.S. 220 (2005);

4      (3) the defendant waives the right to collaterally attack

5  the conviction and sentence pursuant to 28 U.S.C. 2255, except

6  for claims based on ineffective assistance of counsel or

7  prosecutorial misconduct;

8      (4) the defendant waives the right to have the sentence

9  modified pursuant to Title 18 United States Code Section

10  3582(c)(2);

11      And (5) the defendant waives the right to appeal the

12  Court's determination of any forfeiture issues and subsequent

13  forfeiture order, if any.

14          THE COURT:  All right.  Mr. Maggio, did you listen to

15  the statement that was just given?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Okay.  And you understood those waivers?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  Okay.  Now, having discussed all of your

20  rights with you, do you still want to enter a plea of guilty?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Have any threats or promises been made to

23  you to get you to plead guilty?

24          THE DEFENDANT:  No, sir.

25          THE COURT:  Are you pleading guilty because it's what

1    you want to do?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  Okay.  And, Ms. Peters, would you state

4    for the record what facts you would prove if we were to have a

5    trial in this case?

6          MS. PETERS:  Yes, Your Honor.  And these facts are

7    intended to cover the elements of the crime that are in

8    paragraph 2 of the plea agreement.

9          THE COURT:  Let me ask this.  I see a couple of people

10   here who -- are they with you, Mr. Maggio, maybe your son and

11   maybe a friend, brother, or something -- I'm just making

12   sure -- in the back?  Do you have any relatives here?

13         THE DEFENDANT:  No.  I have a wife.

14         THE COURT:  Just making sure.  The young man who is

15   sitting back there, I didn't know if that was your son, or that

16   may be somebody just -- he's looking around like:  Who, me?

17   The young man in the purple shirt.  I was going to ask, if that

18   was your son or nephew or something like that --

19         THE DEFENDANT:  No, sir.

20         THE COURT:  -- I was going to give you a right to tell

21   me whether you wanted him to hear all of this.  I wouldn't

22   want, you know, a son to sit here and listen to all of this

23   before we go through it.  But that's fine since he's not

24   related.

25         You can continue.

1          MS. PETERS:  Thank you, Your Honor.  The government

2     would show the following through witness testimony and

3     documentary evidence, among other things:  In 2013 and 2014,

4     the defendant, Michael A. Maggio, was an elected circuit judge

5     for the State of Arkansas, Twentieth Judicial District,

6     Second Division.  During his tenure as a circuit judge, Maggio

7     was an agent of the State of Arkansas and the

8     Twentieth Judicial District, and he presided over criminal,

9     civil, domestic relations, and probate cases filed in Faulkner,

10    Van Buren, and Searcy counties.  Individual A was a stockholder

11    in numerous nursing homes located in Arkansas.  Individual A

12    owned Company A, a nursing home located in Faulkner County.

13    Individual B was a lobbyist and political fundraiser.

14         In or about 2012, Maggio was assigned to preside over a

15    civil matter filed in Faulkner County Circuit Court.  The

16    plaintiff in that matter, the estate of a decedent, filed a

17    complaint alleging, among other things, that Company A,

18    Individual A, and others had neglected and mistreated the

19    decedent leading to the decedent's death while the decedent was

20    in Company A's care.  In or about May 2013, the lawsuit

21    proceeded to trial, with Company A as the only defendant.  On

22    or about May 16th, 2013, at approximately 5:50 p.m., the jury

23    returned a verdict in the plaintiff's favor, awarding damages

24    against Company A in the amount of $5.2 million.  On or about

25    June 17th, 2013, at approximately 10:05 a.m., attorneys

1    representing Company A filed a motion for new trial or

2    remittitur, seeking, among other things, to reduce the amount

3    of damages awarded by the jury to the plaintiff.

4         Also in or about early 2013, Individual B and others asked

5    Maggio to consider running as a candidate for the Arkansas

6    Court of Appeals.  In or about May 2013, Maggio and Individual

7    B met with others to discuss Maggio's campaign for the Court of

8    Appeals.  During the meeting, Maggio was told that he would

9    need to raise more than $100,000 to run a successful campaign.

10   Individual B told Maggio that Maggio would be responsible for

11   smaller donations from friends and family, totaling

12   approximately 25,000 to $50,000, and Individual B would be

13   responsible for covering the difference by raising funds from

14   "industry types" including, among other entities, nursing

15   homes.  On or about May 16th, 2013, at approximately

16   10:33 a.m., Individual B sent Maggio a text message stating,

17   quote, I have a LR lunch today with the nursing home folks.

18   The topic will be judicial races.  You are at the top of the

19   list, end quote.

20        On or about June 27, 2013, Maggio formally announced his

21   candidacy for the Arkansas Court of Appeals for the nonpartisan

22   general election to be held May 20, 2014.  On or about

23   June 29, 2013, at approximately 8:15 a.m., Individual B sent

24   Maggio a text message stating in part, quote, Well your first

25   50K is on the way, end quote.  Maggio understood that this

1   $50,000 included financial support from Individual A.

2       Between on or about June 29th, 2013, and on or about

3   July 8, 2013, Individual B communicated to Maggio stating, in

4   essence:  Win, lose, or draw, you have Individual A's support,

5   end quote, referring to Maggio's decision on the motion for new

6   trial or remittitur.  Maggio understood that the purpose of

7   this was message was not to reassure Maggio that he had

8   Individual A's support regardless of any decision on the

9   remittitur, but rather Individual B was reminding Maggio to

10  make a favorable ruling to Individual A and Company A because

11  of Individual A's financial support of Maggio's campaign.  At

12  another time, Individual B reminded Maggio that he would

13  receive campaign financial support if he made the, quote, tough

14  calls, end quote, while on the bench.  Maggio understood that

15  Individual B was advising Maggio that, in exchange for Maggio's

16  ruling in favor of Company A and Individual A, Individual A

17  would provide campaign donations to Maggio.

18      On or about July 8th, 2013, during the early afternoon,

19  Maggio held a hearing on Company A's pending post-verdict

20  motions, including the motion for remittitur.  On or about

21  July 10th, 2013, Maggio signed an order denying Company A's

22  motion for a new trial, but granting Company A's motion for

23  remittitur.  Maggio reduced the judgment against Company A from

24  5.2 million to $1 million.

25      At the time Maggio granted the remittitur, Maggio

1  understood that:  (a) the Arkansas Code of Judicial Conduct

2  prohibited candidates for judicial office from soliciting or

3  accepting contributions for a candidate's current campaign more

4  than 180 days before the applicable election; (b) judicial

5  candidates in Arkansas could not accept contributions for the

6  nonpartisan judicial election (held on May 20th, 2014) until

7  November 21, 2013; (c) judicial candidates were prohibited from

8  personally soliciting campaign contributions or personally

9  accepting campaign contributions, but could establish campaign

10  committees to receive contributions; and (d) to reduce

11  potential disqualification and to avoid the appearance of

12  impropriety, judicial candidates should, as much as possible,

13  not be aware of those who have contributed to the campaign.

14  While Maggio told others that he needed to stay away from the

15  nursing home industry while raising money because of the

16  pending case, in fact Maggio was aware prior to granting the

17  remittitur that Individual B had obtained a specific commitment

18  from Individual A to contribute to Maggio's campaign for the

19  Arkansas Court of Appeals, and that Individual B had done so

20  outside of the authorized time frame.

21      Maggio granted the remittitur in part because Maggio

22  wanted to retain Individual A's financial support of his

23  campaign for the Court of Appeals.  Maggio accepted Individual

24  A's financial support of his campaign for the Arkansas Court of

25  Appeals intending to be influenced and induced to remit the

1    judgment against Company A.

2        Maggio stipulates that the United States would show that

3    on or about July 8, 2013, Individual A wrote $3,000 checks to

4    eight PACs, meaning political action committees, for a total of

5    $24,000, intending that the money would go to Maggio's

6    campaign.  Maggio further stipulates that the United States

7    would show that Individual B used seven of these checks to fund

8    the PACs that contributed to Maggio's campaign.  Specifically,

9    Maggio stipulates that between in or about December 2013 and in

10   or about January of 2014, Maggio's campaign received at least

11   $12,950 from PACs established in or about July 2013 by

12   Individual B, funded by the checks written by Individual A on

13   July 8, 2013.

14       As indicated above, between in or about May 2014 and in or

15   about July 2014, Maggio communicated with Individual B in

16   person, by text, and by telephone.  Maggio stipulates that

17   records obtained from his cellular phone and the cellular

18   phones of Individual A and Individual B would show the

19   following contacts.

20       And, Your Honor, there's a listing of contacts there.

21   They relate to pertinent contacts on May 16th, 2013,

22   June 17, 2013, July 8, 2013, and July 9th, 2013.

23       During this time period, Maggio's communications with

24   Individual B were about the campaign or the litigation.  In

25   March 2014, when Individual A's contributions to the PACs

1    became publicly known, Maggio talked with another person about

2    deleting text messages between Maggio and Individual B.  That

3    person also suggested that Maggio delete text messages between

4    Maggio and that person.  Maggio then deleted these text

5    messages.

6         Maggio further stipulates that the United States would

7    show that in calendar years 2013 and 2014, the State of

8    Arkansas, Twentieth Judicial District, received over $10,000 in

9    federal funding.

10         Finally, Maggio agrees that the facts described in this

11    paragraph are included for the purpose of establishing a

12    factual basis for his plea, but do not include all of the facts

13    and information known by Maggio about these events and acts.

14         And, Your Honor, I neglected to mention before, one of the

15    stipulations is the United States agrees to recommend a

16    sentence within the guidelines range, understanding that that's

17    not binding on the Court.

18         THE COURT:  I understand.

19    Mr. Maggio, did you listen to the statements given by the

20    U.S. Attorney?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  Were her statements accurate?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  And do you understand the nature of the

25    charge against you and the maximum penalty you face?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  And how do you plead to the information?

3          THE DEFENDANT:  Guilty.

4          THE COURT:  And did you, in fact, commit the offense

5     as charged?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  And, Ms. Rogers, do you know

8     of any reason why I should not accept the guilty plea?

9          MS. ROGERS:  No, Your Honor.

10          THE COURT:  All right.  I find that the offense as

11     charged in Count 1 of the information was committed by the

12     defendant, Michael A. Maggio.  I also find that Mr. Maggio is

13     entering this plea voluntarily with full knowledge of the

14     facts, his rights, and the possible consequences.  And for

15     those reasons, I accept the guilty plea.

16          Now, there is no underlying indictment or anything, is

17     there?

18          MS. PETERS:  No, Your Honor, just the information.

19          THE COURT:  I was going to ask you is there something

20     to dismiss.  So there's not.

21          Okay.  Now, a question, because it will be some time

22     before we'll be back for sentencing.  What will happen, Mr.

23     Maggio, is -- and I think I explained it to you -- probation

24     will come out and perform its presentence investigation and

25     will prepare a presentence investigation report.  A copy of

1   that report will go to Ms. Rogers and a copy will go to the

2   United States.  Ms. Rogers will sit down and go over it with

3   you and see everything that's in it.  What I ask you to do is

4   read it very carefully to make sure that the information

5   contained in it is accurate because that's going to be the

6   information I use to determine what an appropriate sentence is

7   for you.

8        Also, if there's anything in it that's inaccurate, please

9   bring it to the attention of Ms. Rogers and she'll file an

10  objection.  And normally what will happen is she'll sit down

11  and work it out with probation.  But if they can't work it out,

12  then we'll have to have a hearing to determine what the truth

13  is.  And then we'll bring you back in here and we'll issue your

14  sentence at that point.

15       Now, it was brought to my attention by the law clerk that

16  the defendant was going to ask to remain out pending

17  sentencing.  Is there any objection by the government?

18       MS. PETERS:  There is no objection, Your Honor.  There

19  will need to be bond conditions set.

20       THE COURT:  Okay.  And do we have all of that drawn

21  up?

22       MS. ROGERS:  And, Your Honor, I did speak with

23  Mr. Garman this morning.  And I understand that if my client

24  was employed, that he would be under no supervision pending

25  sentencing.  And he is currently seeking gainful employment.

1        THE COURT:  I don't know -- and we have a member of

2    probation here.  Is that the case?  Come on down.  Is that the

3    case?  I mean, I just don't know.  I don't normally handle

4    these issues.

5        THE PROBATION OFFICER:  Your Honor, I'm not aware of

6    the conversation she may have had with pretrial services.  I

7    ran over just before court.  Because I haven't had a chance to

8    speak with Mr. Maggio, we would still request some sort of

9    conditions imposed.  And they can modify those later if it's

10   not necessary.

11       THE COURT:  Okay.  And the amount of supervision can

12   be worked on.  I mean, it's not like he's going to have to come

13   down and have sessions and all of that.  But I think what they

14   will still want to do is monitor what he's doing while he's

15   out.

16       MS. ROGERS:  And that's fine, Your Honor.  I

17   understand that you -- I imagine you do have to impose some

18   conditions.  We're asking for no conditions or low conditions.

19       THE COURT:  I understand.

20     What's the government's position?

21       MS. PETERS:  Your Honor, the government is comfortable

22   with the minimal conditions.  We don't believe he's a risk of

23   flight or a danger to the community.  However, we would ask

24   that mental health counseling at the direction of pretrial

25   services be made available as a condition.

1          THE COURT:  Okay.

2          MS. ROGERS:  And, Your Honor, my client is seeking

3    mental treatment through his priest at his church, and so we

4    would just ask that that continue.

5          THE COURT:  Okay.  And what will happen is -- what

6    normally happens, Ms. Rogers and Mr. Maggio, is an assessment

7    will be done by probation.  They'll look and see what do you

8    need.  And if, you know, meeting with your priest or whatnot is

9    fine, they'll say:  Keep meeting with your priest.  If they

10   think that they need to get somebody with another expertise in

11   to just talk to you to make sure everything is okay, they will

12   do that.  So I think we'll still have an assessment done so we

13   can see where we are and what needs to happen.

14        Is there any objection to that from probation?  That's

15   normally the way it goes, right?

16        THE PROBATION OFFICER:  Correct.  Yes, sir.

17        THE COURT:  All right.  Let's stand down and I'll read

18   through these bond papers and we'll get it taken care of before

19   you leave.

20        (Proceedings adjourning at 11:55 a.m.)

21                C E R T I F I C A T E
          I, Judith A. Ammons, Official Court Reporter, do hereby
22   certify that the foregoing is a true and correct transcript of
     proceedings in the above-entitled case.
23

24

25   /s/  Judith A. Ammons, RPR, CRR, CCR   Date: January 27, 2015
          United States Court Reporter



                    Judith A. Ammons, RPR, CRR, CCR
                      United States Court Reporter