IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 4:15CR00001-1 BSM |
| v. | ) | 18 U.S.C § 666 (a)(1)(B) |
| | ) | |
| MICHAEL A. MAGGIO | ) | |

## **MOTION TO DISMISS**

COMES NOW the Defendant, Michael A. Maggio, by attorney James E. Hensley, Jr., and hereby moves the Court enter an Order *Nunc Pro Tunc* to dismiss with prejudice the *Information* and case in its entirety.

## I. INTRODUCTION

On January 9, 2015, in the Eastern District Court of Arkansas, case number: 4:15-cr-00001-BSM-1, Michael A. Maggio, a former State of Arkansas Circuit Court Judge, agreed to waive indictment and plead guilty to an *Information* charging him with one count of federal program bribery in violation of 18 U.S.C § 666(a)(1)(B). Maggio contemporaneously entered into a Plea Agreement and Addendum with the United States and pleaded guilty to the charge.

Under *United States v. Bridget Anne Kelly*, No. 17-1818, 590 U. S. ___ (3rd Cir. 2020), *United States v. Antonio Tillmon*, No. 17-4648 (4th Cir. 2019), and *Cleveland v. United States,* 531 U.S. 12 (5th Cir. 2000), all issued after Mr. Maggio entered his plea agreement; and when considering *McNally v. US*, 483 U.S. 350

1

(1987), and the issues herein stated, the Court should enter an Order *Nunc Pro Tunc* to dismiss with prejudice the *Information* and case against Mr. Maggio in its entirety.

## II. FACTUAL BACKGROUND

On March 24, 2016, the Honorable Judge Brian Miller, Chief U. S. District Judge for the Eastern District of Arkansas, having accepted the Defendant's plea of guilty on December 9, 2015 of Court 1 of the indictment, 18 U.S.C § 666(a)(1)(B), a Class C Felony, Bribery Concerning Federal Programs Receiving Federal Funds, sentenced the Defendant to 120 month's imprisonment, two years supervised release, no fine, no restitution, and a $100 special penalty assessment. The *Judgment* was entered on March 28, 2016.

Mr. Maggio served 51 months in prison, assisted the Prosecution as requested, was granted early termination of supervised release, and complied with the orders of the Court, Prosecution, Bureau of Prisons, and the obligations of Parole.

From the time of the sentence to Mr. Maggio's release, developments in the law, statute, and the jury trial of the co-defendant allow the Court to dismiss the *Information* and enter an order *Nunc Pro Tunc* to place Mr. Maggio in the position he was in before the indictment.

### III. ARGUMENT

Mr. Maggio is now the sole defendant in this matter and only person to be found guilty of any charge. Mr. Maggio pleaded guilty at the recommendation of his attorney who had little experience in the federal criminal law system. His attorney did so without benefit of discovery and no discussion of the facts of the case and any defense available for Mr. Maggio. Mr. Maggio's counsel declined calls from attorneys representing other parties. She recommended entering a plea of guilty before the charges were formerly filed. Mr. Maggio complied.

### UNITED STATES V. BRIDGET ANNE KELLY

The statute under which Mr. Maggio pleaded guilty is 18 U.S.C § 666(a)(1)(B). After Mr. Maggio entered his plea, the United States Supreme Court further defined this statute in *Bridget Anne Kelly v. United States* No-18-1059, 590 U.S. ___ 2020. Decided May 7, 2020. Justice Kagan, J. delivered the opinion for a unanimous Court.

"Under 18 U.S.C. $1343, the Federal wire fraud statute makes it a crime to effect (with the use of wires) "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Similarly, the federal-program fraud statute bars "obtaining by fraud" the "property" (including money) or federally funded program or entity. §666(a)(1)(A). These statutes [including §666(a)(1)(B) in other similar cases] are

"limited in scope to the protection of property rights," and do not authorize federal prosecutors to "set standards of disclosure and good government for local and state officials." *Id.* at 360.

In *United States v. Bridget Anne Kelly*, No. 17-1818, 590 U. S. ___ (3rd Cir. 2020), the evidence showed wrongdoing: deception, corruption, and abuse of power. But federal fraud statutes at issue do not criminalize all such conduct. Under settled precedent, the officials could violate those laws only if an object of their dishonesty was to obtain money belonging to the [Federal Government]. The Court in *Kelly* reversed the lower Court finding of guilt for violation of 18 U.S.C § 666. The money or property must be taken from the federal government.

After, *Kelly,* the statute provided that it did not include a breach of behavior that was against "good government." Financial gain was required – seeking money or property from the United States Government. Mr. Maggio received no financial gain and no nexus to any funds from the government. *See* Kelly, *supra,* at 360. The facts and allegations in the *Information* show that Mr. Maggio received no financial gain – money or property – from the federal government.

### UNITED STATES V. ANTONIO TILLMON

In *United States v. Antonio Tillmon*, No. 17-4648 (4th Cir. 2019), the Court stated that "after being caught in a sting operation aimed at exposing corrupt law

enforcement officers, Antonio Tillmon was convicted by a jury on multiple counts: conspiracy to commit drug trafficking, conspiracy to use firearms while drug trafficking, attempted possession of heroin with intent to distribute, using or carrying a firearm while drug trafficking, and three counts of federal programs bribery. On appeal, Tillmon challenges the district court's denial of his motion for a judgment of acquittal as to these offenses and its admission of a video-recorded conversation between Tillmon and an undercover agent."

The Court affirmed the charges of conspiracy, attempted possession and firearms possession, but vacated the federal programs bribery convictions. For discussion of the Court's analysis, the following is provided:

> Tillmon appeals the district court's denial of his motion for a judgment of acquittal with respect to the three charges of federal programs bribery, in violation of 18 U.S.C. § 666(a)(1)(B) (Counts 32, 36, and 54).
> In relevant part, this statute prohibits individuals **who are agents of a local government agency** from "accept[ing] . . . anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such . . . **[government agency]** . . . involving anything of value of $5,000 or more." Id. § 666(a)(1)(B). **Emphasis added**.
> As a threshold to liability under this statute, the Government must demonstrate that the local government at issue "receive[d], in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." § 666(b); see also, *Id.* § 666(d)(5) (defining "in any one-year period").
> Pointing to the amount he was paid for each individual transport, Tillmon asserts the Government failed to proffer sufficient evidence to establish that his services to the fake DTO were worth at least $5,000.$_6$
> We have not previously considered § 666(a)(1)(B)'s requirement that charged conduct involve "anything of value of $5,000 or more." But the statutory language reveals that this element requires proof of the value

of whatever was exchanged for the bribe. See § 666(a)(1)(B) (requiring that the business, transaction, or series of transactions of the government agency "involve[d] anything of value of $5,000 or more").

This has led our sister circuits to describe the requisite proof as identifying the value of the "subject matter" of the bribe. United States v. Robinson, 663 F.3d 265, 271–76 (7th Cir. 2011).

The indictment charged Tillmon with accepting cash from the undercover agents posing as members of the DTO on each of the three transports, with each count corresponding to one of the transports, and it identified the subject matter of each of the 6 three bribes as "protecting shipments of purported narcotics." J.A. 149, 153, 171.

As we have already recounted, the record depicted what that protection entailed: Tillmon was to accompany the drugs on a journey up the East Coast, drive or ride in one of the vehicles containing or accompanying the narcotics, and recite a cover story if the caravan was stopped. And once the drugs were delivered to another member of the DTO in Maryland, he was paid—$2,000 in October 2014; $2,000 in December 2014; and $2,500 in March 2015.

Our sister circuits have recognized that one valid method of valuing an intangible, such as a service provided, is the amount of the bribe. E.g., United States v. Hardin, 874 F.3d 672, 676 (10th Cir. 2017); United States v. Fernandez, 722 F.3d 1, 12–13 (1st Cir. 2013) (rejecting the value of the bribe test in favor of the value of the "transaction" test but acknowledging that the bribe amount "may be relevant [evidence] in determining the value of the bribe's objective" when "the subject matter of the bribe is a 'thing of value' without a fixed price"); Robinson, 663 F.3d at 271, 275 ("Without excluding other possible methods of valuation, we agree that the amount of the bribe may suffice as a proxy for value; at least it provides a floor for the valuation question.").

This approach is akin to "appraising" the service as an appraiser values a tangible asset—"by looking at how much a person in the market would be willing to pay for" it. United States v. Marmolejo, 89 F.3d 1185, 1194 (5th Cir. 1996). The Government properly recognizes that using the straightforward bribe-as-proxy method does not satisfy its burden in this case.

The Government chose to charge Tillmon separately for each of the three transports, meaning that the Government had the burden to 27 prove that the value of his services on each of the individual transports was $5,000 or more. Under the bribe-as-proxy method, the Government's evidence is insufficient because Tillmon's aid on each transport was valued at less than $5,000 each time.

6

Instead, the Government advances three arguments for what other evidence could have been used to satisfy its burden: (1) that the amount of the bribes paid to the team as a whole on each transport exceeded $5,000 (the "aggregation theory"); (2) that the market value of the drugs being trafficked on each transport exceeded $5,000 (the "market value theory"); and (3) that the amount the Town of Windsor paid for public safety in each year at issue exceeded $5,000 (the "public safety theory").

Although the Government claims its aggregation theory is merely a variation on the approved bribes-as-proxy method, it is not the equivalent and we cannot use it here. The Government contends that the jury was permitted to aggregate the bribes paid to all of the team members on a particular transport to arrive at the requisite $5,000. To be sure, employing that method brings the dollar amount expended on each transport to more than $5,000.

Fatally for the Government, however, the aggregation method does not arrive at an amount that reflects the statutory obligation to produce evidence of the value of the subject matter of the bribe charged in the indictment—that is, Tillmon's "protecting shipments of purported narcotics." J.A. 149, 153, 171. The aggregation method conflates the value of Tillmon's services to the DTO with the value of the team services to the DTO.

The record does not permit the conclusion that Tillmon single-handedly provided services equal to the amount paid to the team as a whole. And without such evidence demonstrating that Tillmon's services were worth that amount, the aggregation method is not an acceptable 28 valuation method.

For these reasons, we reject the aggregation method as an appropriate valuation method in this case. The Government's proposed market value theory fares no better. As our sister circuits have recognized, in some instances, it may be appropriate to look at the market value of the bribe from the perspective of the briber or an interested third party as a means of valuing the subject matter of the bribe. E.g., Fernandez, 722 F.3d at 15 (approving valuation method for votes related to pending legislation by looking to the briber's expected financial gain flowing from the passage of that legislation); United States v. Curescu, 674 F.3d 735, 738, 741 (7th Cir. 2012) (approving valuation of a bribe given to falsely certify that plumbing had been completed by a licensed plumber based on the amount of money the briber did not have to pay a licensed plumber to perform the work); United States v. Hines, 541 F.3d 833, 837 (8th Cir. 2008) (using market value

theory to value expedited eviction orders based on the savings to the property owners in avoiding the costs typically incurred in eviction).

**But even then, in addition to evidence of something having value to the briber or a third party, the Government also must come forward with evidence "linking" that valued item to the services the defendant provided. See, United States v. Owens, 697 F.3d 657, 661 (7th Cir. 2012). Emphasis added.**

To reiterate, the Government's evidence must bear on the value of the subject matter of the bribe, and that obligation is not satisfied with evidence of something "to which the subject matter of the bribe is **tangentially** related." *Id*.

**In this case, the Government pointed to something of purported value to the briber—the market value of the narcotics—but it failed to put forward any evidence linking that 29 value to Tillmon's protection of the caravan, the subject matter of the bribe. Emphasis added.**

Specifically, the Government relies on Lisa's statement during the March 2015 transport that the team was shipping a million dollars of heroin and argues that because Tillmon was hired to protect a million-dollar transport on that occasion and to protect similar package quantities during the other two transports, his services on each transport were worth a million dollars.

The Government then contends that the Court can infer from the evidence that the other transports involved similar drug packages and that they also thereby satisfied the $5,000 requirement. That reasoning is flawed because no evidence in the record links the purported value of the drugs to the value of Tillmon's protection services.

As the record stands, the two are merely tangentially related. The Government could have attempted to provide evidence sufficient to create the necessary linkage in several ways. For example, it could have offered evidence that trafficking organizations typically provide protection with a cut of the profits from eventual sales.

Or it could have offered evidence that the cost of legitimate protection for drug transports involving that amount of drugs costs real DTOs $5,000 or more. But the Government offered no such evidence. In fact, it failed to introduce any evidence allowing the inference that the value of Tillmon's services was connected to the value of the drugs.

Thus, the Government's market value theory lacks any evidentiary basis. The Government's third argument, the public safety theory of valuation, can be disposed of quickly. For the first and only time in this appeal, the Government mentions in a single sentence of its Response Brief that the $5,000 value of Tillmon's services could be measured based on the

8

> Town of Windsor's annual public safety budget. Setting aside 30 any concerns regarding the timeliness and adequacy of the Government's argument, we observe that Windsor's entire public safety budget is unrelated to and would vastly overstate the value of Tillmon's services to the DTO.
> As such, it would be an improper measure of the subject matter of the bribe. In sum, the Government failed to produce evidence from which a jury could find that Tillmon's services to the DTO had a value of $5,000 or more.
> Though the Government might have satisfied this requirement in several ways, it failed to introduce any evidence other than the amount Tillmon was paid as a bribe to establish that the value of his protection services were worth at least $5,000.
> And in the absence of evidence to support that element of the offense, Tillmon's convictions for federal programs bribery, Counts 32, 36, and 54, cannot stand and we vacate each of these convictions.

The 4th Circuit Court held that the government failed to produce evidence from which a jury could find that defendant's services to the drug trafficking organization had a value of $5,000 or more to the government.

The Court held that Mr. Tillmon was not seeking money or property from the government. Mr. Maggio did not seek money or property from the government either *See* Kelly, *supra,* at 360.

### UNITED STATES V. GALLAGHER

In *United States v. Gallagher*, 94 F. Supp. 640, 642 (W.D. Pa. 1950) "a person accused of a crime cannot plead guilty to an offense which does not exist as a matter of law, or cannot vest in the District Court jurisdiction to impose judgment and sentence after a plea of guilty is entered to an indictment for a crime which does not exist under the laws of the United States."

The United States Supreme Court and other circuits have now defined an essential element of 18 U.S.C. § 666 as the existence of a minimum of $5,000 of **federal property** be specifically plead and proven was converted. That is the service provided by the defendant must be of at least $5,000 of **federal** money. It is not enough that an agency receives more than 5,000. The specific bribery act must be of money or property of $5,000 or more from the **federal government**. See generally, *United States v. Antonio Tillmon*, No. 17-4648 (4th Cir. 2019).

<u>UNITED STATES V. JAMES CLARK</u>

In *United States v. James Clark*, 3:08-cr-00023-JWS, United States District Judge, Ralph R. Beistline, held in reversing the Defendant's sentence: "As the Ninth Circuit has recognized, it is a 'fundamental principle that it is never just to punish a man or woman for an innocent act.' *United States v. Barron*, 172 F.3d 1153, 1161 (9th Cir. 1999). See also, *United States v. Gallagher*, 94 F. Supp. 640, 642 (W.D. Pa. 1950), [cited herein] "a person accused of crime cannot plead guilty to an offense which does not exist as a matter of law, or cannot vest in the District Court jurisdiction to impose judgment and sentence after a plea of guilty is entered to an indictment for a crime which does not exist under the laws of the United States."

<u>18 U.S.C § 666(a)(1)(B)</u>

Under 18 U.S.C. § 666 - Theft or bribery concerning programs receiving Federal funds,

"(a)Whoever if the circumstance described in subsection (b) of this section exists—
(1)being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
(A)embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
(i)is valued at $5,000 or more, and
(ii)is owned by, or is under the care, custody, or control of such organization, government, or agency; or
(B)corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more; or
(2)corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;
shall be fined under this title, imprisoned not more than 10 years, or both.
(b)The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one-year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.
(c)This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business.
(d)As used in this section—
(1)the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative;
(2)the term "government agency" means a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program;
(3)the term "local" means of or pertaining to a political subdivision within a State;

(4)the term "State" includes a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States; and
(5)the term "in a one-year period" means a continuous period that commences no earlier than twelve months before the commission of the offense or that ends no later than twelve months after the commission of the offense. Such period may include time both before and after the commission of the offense."

In *United States v. Bridget Anne Kelly*, No. 17-1818, 590 U. S. ___ (3rd Cir. 2020), the evidence showed wrongdoing: deception, corruption, and abuse of power. But federal fraud statutes at issue do not criminalize all such conduct.

Under settled precedent, the officials could violate those laws only if an object of their dishonesty was to obtain money belonging to the **[Federal Government]**with an intent to defraud. The Court in *Kelly* reversed the lower Court finding of guilt for violation of 18 U.S.C. § 666.

## MCNALLY V. UNITED STATES

In *McNally v. United States*, 483 U.S. 350 (1987), the United States Supreme Court decided that the "federal statute criminalizing mail fraud applied only to the schemes and artifices defrauding victims of money or property, as opposed to those defrauding citizens of their rights to good government."

Continuing, the Court stated that "a) The language and legislative history of § 1341 demonstrate that it is limited in scope to the protection of money or property rights and does not extend to the **intangible** right of the citizenry to good government. The argument that, because the statutory phrases "to defraud" and "for obtaining money or property by means of false or fraudulent pretenses,

12

representations, or promises" appear in the disjunctive, they should be construed independently, so that "a scheme or artifice to defraud." *Id*. at 483. **Emphasis added**.

"To reiterate, the Government's evidence must bear on the value of the subject matter of the bribe, and that obligation is **not** satisfied with evidence of something "to which the subject matter of the bribe is **tangentially** related." Tillmon, *Id*. at 29. **Emphasis added**.

## UNITED STATES V. GILBERT BAKER

In *United States v. Gilbert Baker* No. 4:19-cr-31-DPM (2022), Mr. Baker was charged with one count of Conspiracy in violation of 18 U.S.C. § 371, one count of Bribery Concerning Programs Receiving Federal Funds in violation of 18 U.S.C. § 666(a)(2), and seven Counts of Honest Services Wire Fraud in violation of 18 U.S.C. §§ 1343, 1346. The jury acquitted Mr. Baker of the most essential and condition precedent element: a conspiracy to commit bribery. Gilbert Baker was a co-Defendant with Mr. Maggio. The trial took several days. The government called multiple witnesses and proffered hundreds of exhibits into evidence.

Before the jury trial, in the Court's July 14, 2021 Order, Judge Marshal discusses the objection of the United States to Final Instruction 18 which stated, "there must be some connection between the criminal conduct and the State of Arkansas, Twentieth Judicial District." *Doc. 76-3 at 42*.

The United States claimed the statement disagreed with the law in the 8th Circuit. The Court ruled that "the plain language of the statute requires that the bribe be "in connection with" a federally funded agency's "business, transaction, or series of transactions[.] 18 U.S.C. § 666(a)(1)(B).

This means the jury found no agreement, discussion, or no offer of bribery ever communicated to Mr. Maggio by Mr. Baker since more than one person is required to support such a charge.

The Prosecuting Attorney ratified the finding of the jury of acquittal by declining to retry Baker on the remaining seven counts. The Prosecution took the unusual step of declaring Baker and other alleged participant's innocence by dismissing all potential charges with prejudice and declining to charge anyone else. See, generally, *United States v. Gilbert Baker,* 4:19-cr-31-DPM (2022).

## IV. CONCLUSION

On January 9, 2015, in the Eastern District Court of Arkansas, case number: 4:15-cr-00001-BSM-1, Michael A. Maggio, a former State of Arkansas Circuit Court Judge, agreed to waive indictment and plead guilty to an *Information* charging him with one count of federal program bribery in violation of 18 U.S.C § 666(a)(1)(B). Maggio contemporaneously entered into a Plea Agreement and Addendum with the United States and pleaded guilty to the charge.

Mr. Maggio served his time and adversity of the punishment set forth by the Court. He followed the directives of the Court, Prosecutor, the Bureau of Prisons, and the Department of Probation.

Mr. Maggio is trained in the law as an attorney and license on March 28, 1990. He served his community for more than 25 years. Where other defendants may be able to continue their career after a prison sentence, i.e., plumber, contractor, etc., without this Court's intervention, Mr. Maggio has little chance of returning to his chosen profession as an attorney.

Mr. Maggio simply requests that the Court place him in the same condition as all other defendants or persons of interest in this case. Mr. Maggio's charge, under controlling United States Supreme Court precedent, is not a crime. The other defendant in this matter was exonerated and the Government declined to advance trial of any other remaining charges.

Granting Mr. Maggio's request is specific to this case and will have no precedential effect.

An *Information* that does not allege that a crime has occurred should be dismissed. *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). The present state of the law, case law, and statute provide respite to Mr. Maggio and his cause.

Mr. Michael A. Maggio, former Bureau of Prison Inmate #28940-009 for 51 of 120 months, an attorney in the Great State of Arkansas beginning March 28,

1990 until 2015, he and his wife have eight children and five grandchildren, with decades of service to his church, family, and community, after completing all requirements, orders, and in the spirit which those orders were made, by the Court, Prosecutor, Bureau of Prisons, and Probation, along with changes in the statute under which he pleaded guilty, caselaw that defines his conduct amended, and with all humility and no malice, prayerfully requests the Court enter an order *Nunc Pro Tunc* to dismiss the *Information* and all negative action towards him.

For reasons stated herein, Mr. Maggio moves the Court to enter an Order *Nunc Pro Tunc* to dismiss with prejudice the *Information* against him and exonerate him of any charges.

Dated: May 2, 2023.

        Respectfully submitted,

        /s/ James E. Hensley, Jr. 99069
        HENSLEY LAW FIRM, P.A.
        P. O. Box 11127
        Conway, Arkansas 72034
        501.327.4900 Fax: 501.400.7920
        jim@jimhensley.com