IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:15CR00001-1 BSM |
| | ) | |
| MICHAEL A. MAGGIO | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO
MOTION TO DISMISS THE INFORMATION AND CASE *NUNC PRO TUNC*"**

The United States of America, by and through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Julie Peters, Assistant United States Attorney, for its Response in Opposition to defendant Michael Maggio's Motion to Dismiss the Information and Case *Nunc Pro Tunc* (docket no. 93), respectfully states as follows.

**I.    Introduction**

Michael Maggio is a former state court judge who remitted a multi-million dollar civil judgment in exchange for a bribe in the form of campaign contributions. As a result of this conduct, on January 9, 2015, Maggio consented to the entry of a one-count Information charging him with a violation of 18 U.S.C. § 666(a)(1)(B), soliciting or accepting a bribe as an agent of a program receiving federal funds. At the same hearing, Maggio pleaded guilty to the charge pursuant to a Plea Agreement and Cooperation Addendum. After Maggio reneged on the cooperation agreement and tried unsuccessfully to withdraw his plea, this Court sentenced Maggio to ten years'

1

imprisonment and two years' supervised release.  Later, Maggio resumed his cooperation, and this Court granted the United States' motion to reduce his term in the Bureau of Prisons.  Maggio completed his sentence on November 16, 2022, when the Court granted early termination of his supervised release.

Maggio, who apparently would like to return to the practice of law (which he cannot do as a felon), now files this motion asking the Court to go back in time to dismiss the consented-to charging document and by extension the case against him.  In support of his motion, Maggio relies on both previously-rejected arguments as well as new, erroneously-interpreted case law.  Further, Maggio also fails to identify any legal vehicle through which he could bring this motion.  In summary, Maggio's motion lacks merit, and the United States respectfully requests that this Court deny the motion.

**II.     There is No Merit To Maggio's Substantive Arguments**

Maggio has repeatedly attacked the legality of his conviction, arguing that there was no link between the bribe he accepted and federal funds.  And, repeatedly, courts have ruled against him.  *See United States v. Maggio*, 862 F.3d 642, 645-47 (8th Cir. 2017); *United States v. Maggio*, Case No. 4:15-CR-00001 BSM, Docket Entry 39 (E.D. Ark. Mar. 10, 2016).  The "plain language" of 18 U.S.C. § 666(a)(1)(B) "does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds." *Maggio*, 862 F.3d at 646 (citing *United States v. Hines*, 541 F.3d 833, 835-36 (8th Cir. 2008)); *see also Salinas v. United States*, 522 U.S. 52, 61 (1997) ("§ 666(a)(1)(B) does not require the Government to prove the bribe in question had any particular influence on federal funds"); *Sabri v United*

2

*States*, 541 U.S. 600, 605 (2004).  The cases cited by Maggio in his motion, *United States v. Kelly*, 140 S. Ct. 1565 (2020), and *United States v. Tillmon*, 954 F.3d 628 (4th Cir. 2019), have no impact on that settled law.

      A.      <u>*Kelly* Is a Fraud Case, Irrelevant to Maggio's Bribery Conviction</u>

Maggio argues that following *Kelly*, a conviction under § 666 requires a scheme to obtain the federal government's money or property, and because Maggio received no money or property from the federal government, he is not guilty of the crime.  Maggio is wrong.  *Kelly* is a property fraud case; Maggio is a bribery case.  Although both *Kelly* and Maggio were charged under § 666, they were charged under different subsections, and this makes all the difference.  *See* 18 U.S.C. § 666(a)(1)(A) (*Kelly* – "[w]hoever . . . embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property . . ."); § 666(a)(1)(B) (*Maggio* – "[w]hoever . . . corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded . . .").

In *Kelly*, port authority employees created four days of gridlock on "the busiest motor-vehicle bridge in the world" to punish a mayor who would not endorse the governor for reelection.  *Kelly*, 140 S. Ct. at 1569.  The government charged, as relevant here, § 666(a)(1)(A) (obtaining by fraud the property or money of a federally funded program or entity – namely, the Port Authority).  *Id*. at 1568.  Thus, in *Kelly*, the government was required to prove that the defendants engaged in deception, and the object of their deception was to obtain the Port Authority's property.  *Id*.  The Supreme

Court rejected the government's argument that the following qualified as property: (1) the commandeering of the bridge's lanes, and (2) the cost of compensating public employees used to execute the scheme, such as engineers and back-up toll collectors.  *Id.* at 1572.  The Supreme Court reversed the convictions, holding that (1) the defendants didn't "actually" take the bridge or lanes, they regulated the lanes – which is an exercise of regulatory power, not a taking of property; and, (2) even though usurping a public employee's paid time is a taking of property, that was not the object of the scheme, just incidental to it.  *Id*.  The Supreme Court viewed the scheme in *Kelly* as solely about "political payback," not about money or property.  *Id.* at 1574.  While acknowledging the *Kelly* defendants' profoundly corrupt and dangerous acts, the *Kelly* opinion winds down with the following quote: "To rule otherwise would undercut this Court's oft-repeated instruction: "Federal prosecutors may not use property fraud statutes to "set[ ] standards of disclosure and good government for local and state officials.""  *Id.* at 1574 (citing *McNally v. United States*, 483 U.S. 350, 355 (1987)).

      The maxim stated in *Kelly* harkens back to when federal fraud laws were used to prosecute schemes to defraud citizens of their "intangible rights to honest and impartial government."  *Id.* at 1571.  The Supreme Court held – long before *Kelly* – that fraud statutes are aimed only at schemes to obtain property.  *See, e.g.*, *McNally*, 483 U.S. at 360 (another case cited by Maggio which does not support his argument).  The year after the *McNally* decision, Congress enacted 18 U.S.C. § 1346, expanding fraud schemes to those depriving another of the intangible right of honest services (commonly known as "honest services fraud").  *Kelly,* 140 S. Ct. at 1571.  In 2010, the Supreme Court limited honest

4

services fraud to schemes involving bribes or kickbacks. *See Skilling v. United States*, 561 U.S. 358, 405 (2010).  As a result, *Kelly*, in addition to being inapplicable to the bribery charge at issue in this case, does not represent a change in the law.  Nothing in *Kelly* requires the United States to prove that Maggio "received [] financial gain – money or property – from the federal government," despite Maggio's claims to the contrary. Maggio Motion (docket no. 93), at 4.  The law stands as it did at the time of Maggio's conviction – the crime of accepting a bribe as an agent of a program receiving federal funds "does not require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds." *Maggio*, 862 F.3d at 646.

   B. <u>Maggio Misapprehends *Tillmon*, Which Has No Impact on His Case</u>

Maggio's statement of the holding and cause for reversal in *United States v. Tillmon*, 954 F.3d 628 (4th Cir. 2019) – "the Court held that Mr. Tillmon was not seeking money or property from the government" – is simply wrong.  Maggio Motion (docket no. 93), at 9.  This concept appears nowhere in the *Tillmon* opinion.  *Tillmon* was a sting case involving police officers escorting illegal drugs.  The *Tillmon* court addressed § 666(a)(1)(B)'s requirement that the subject matter of the bribe involve "any thing of value of $5,000 or more."  *Tillmon*, 954 F.3d at 644-45.  The Fourth Circuit reversed the § 666 bribery convictions because the United States failed to prove this element.  The bribes paid to Tillman per transport were less than $5,000.  *Id*. at 645.  The campaign contributions intended for Maggio (based on what was known at the time of the plea agreement, $24,000 divided into eight $3,000 checks simultaneously written to PACs) for

5

taking favorable action as to the $5.2 million verdict well exceeded that amount. The *Tillmon* court addressed other theories by which the $5,000 threshold value could have been met, none of which require discussion here. *Tillmon*, 954 F.3d at 644-46. In summary, a failure of proof in an individual case (what happened in *Tillmon*) does not lead to Maggio's conclusion that *Tillmon* changed fundamental bribery law.

**III.   There is No Procedure by which Maggio Can Seek this Relief**

Maggio has been convicted, served his term of imprisonment, and completed his supervised release. Maggio's Motion points to no legal authority that would permit the Court to adjudicate his motion post-sentence. This is because there is none. Federal Rule of Criminal Procedure 12(b)(3)(B) states that a motion alleging a defect in an information or indictment must be filed prior to trial. While Rule 12(b)(2) permits a defendant to make a motion that the court lacks jurisdiction "at any time while the case is pending," Maggio's case is no longer pending, as the sentence imposed in the judgment of conviction has been completed.

Other district courts considering postconviction motions to dismiss an indictment have construed such motions as ones seeking to vacate, set aside, or correct a judgment under 28 U.S.C. § 2255. *See United States v. Teran*, No. CR16-335RSL, 2018 WL 2387842, at *2, n. 1 (W.D. Wash. May 25, 2018). If this Court were to consider the motion as one filed pursuant to § 2255, Maggio's claims for relief would be barred on multiple grounds. The plain language of § 2255 limits its use to "a prisoner in custody" claiming the right to be released. *See, e.g., United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) (recognizing, in context of restitution challenge, that the "unambiguous

language" in § 2255 affords relief only to prisoners claiming a right to be released from custody). *United States v. Watroba*, 56 F.3d 28, 29 (6th Cir. 1995).

Even if Maggio were able to avail himself of § 2255, "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Maggio's current Motion argues that the Information should be dismissed *nunc pro tunc* because the money or property involved must be taken from the federal government. This is the same argument he raised unsuccessfully before the Eighth Circuit (that there was no factual basis for his guilty plea because there was no nexus between the bribe and federal funds). Because Maggio already raised the issue he raises in his Motion in his direct appeal, he cannot now raise it in a motion under § 2255. Further, a motion under § 2255 would be barred by the limitations period set out in § 2255(f), and none of the exceptions to that rule, such as governmental action preventing him from filing a motion or a newly recognized right made retroactively applicable on collateral review, apply.

Finally, as a matter of equity, Maggio has had an abundance of due process in this case:

- On January 9, 2015, Maggio consented to the entry of a one-count Information charging him with a violation of 18 U.S.C. § 666(a)(1)(B), soliciting or accepting a bribe as an agent of a program receiving federal funds. At the same hearing, Maggio pleaded guilty to the charge pursuant to a plea agreement and cooperation addendum (docket no. 1, 2).

- On February 12, 2016, Maggio filed a motion to withdraw his guilty plea, raising legal and factual arguments, as well as ineffective assistance of counsel (docket no. 21). Maggio later amended his motion to withdraw his guilty plea, adding legal arguments and withdrawing the ineffective assistance of counsel claim (docket no. 32). The Court held oral argument on the motion. On March

7

10, 2016, this Court entered an Order denying Maggio's motion to withdraw his guilty plea (docket no. 39). These pleadings included the issue raised by Maggio in his current motion.

- On March 24, 2016, this Court sentenced Maggio to ten years' imprisonment and two years' supervised release, plus a $100 special assessment (docket no. 45). The parties briefed the sentencing issues, in addition to making argument at the hearing.

- Maggio appealed his conviction and sentence to the United States Court of Appeals for the Eighth Circuit (docket no. 45). Following briefing and oral argument, on July 3, 2017, the Eighth Circuit issued its opinion affirming Maggio's conviction and sentence. *United States v. Maggio*, 862 F.3d 642, 645-47 (8th Cir. 2017). This opinion addressed the issue raised by Maggio in his current motion. The Eighth Circuit's mandate was handed down on July 25, 2017 (docket no. 72).

- On November 6, 2017, the United States Supreme Court denied Maggio's petition for a writ of certiorari (docket no. 74).

- On October 29, 2018, Maggio filed a motion to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255, which he withdrew on December 17, 2018 (docket no. 77, 84). Again, Maggio raised the issue presented in his current motion, as well as an ineffective assistance of counsel claim. This Court granted his motion to dismiss the § 2255 motion on January 28, 2019 (docket no. 86).

- On January 14, 2019, the United States filed a placeholder motion pursuant to Fed. R. Crim. P. 35. On August 25, 2021, the United States filed a supplement to the Fed. R. Crim. P. 35 motion. On September 1, 2021, the Court granted the United States' Rule 35 motion.

- Maggio was released from the Bureau of Prisons after completing his revised sentence of 60 months' imprisonment.

- On October 28, 2022, Maggio filed a motion for early termination of supervised release (docket no. 90, 91). On November 16, 2022, this Court granted Maggio's motion (docket no. 92). Nothing remains of Maggio's case or sentence but a courthouse record.

It is long past time for Maggio to accept that he was properly, legally, constitutionally charged and convicted.

### IV.   The Myth of the Inexperienced Attorney

Once again, rather than stand by his acceptance of responsibility for this crime, Maggio faults his initial counsel for his decision to enter a plea and cooperation agreement.  Maggio states in this Motion:

> Maggio pleaded guilty at the recommendation of his attorney who had little experience in the federal criminal law system.  His attorney did so without benefit of the facts of the case and any defense available to Mr. Maggio. Mr. Maggio's counsel declined calls from attorneys representing other parties.  She recommended entering a plea of guilty before the charges were formally filed. Mr. Maggio complied.

Maggio Motion (docket no. 93), at 3.  Maggio has raised this complaint previously both orally and in writing.  Realizing that an ineffective assistance of counsel claim waives privilege, it is Maggio's practice to withdraw this claim before the Court has an opportunity to review its merit.  The United States now addresses Maggio's criticism of his plea counsel to the best of its ability (and for expediency's sake) without a privilege waiver.  There is no "ineffective assistance of counsel" basis to reinstate Maggio to his status pre-information *nunc pro tunc*.

Maggio's charge that he suffered because his counsel was inexperienced is a non-starter.  At the time of his plea and cooperation agreement, Maggio was represented by Ms. Hoover and Ms. Rogers, experienced attorneys of Maggio's choosing.  Ms. Rogers, who was involved in the federal criminal case from the very first meeting between the government and Maggio, had been practicing federal criminal law for more than five

9

years before the plea. Ms. Rogers was also selected to serve on the court's CJA panel, representing indigent defendants at the court's request for more than four years before this case. Ms. Hoover had extensive knowledge regarding Maggio's background and factual aspects of the case, having represented Maggio before the Ethics Commission, Judicial Discipline Commission, and in a civil case based on the same corrupt conduct as this federal criminal case. During meetings with the government, Maggio appeared to have confidence in and trust with Ms. Hoover based on her prior successful representation of him. For example, Maggio lamented that the agreement Ms. Hoover secured before the Judicial Discipline Commission was deemed too favorable by the Arkansas Supreme Court, which imposed a more severe sanction than that recommended by the JDDC. *JDDC v. Maggio*, No. D-14-671 (Ark. S. Ct. Sept. 11, 2014). Additionally, whether just or unjust, Ms. Hoover obtained Mr. Maggio's dismissal from the civil case on the basis of judicial immunity. *Perkins v. Maggio*, 23CV-14-862, Faulkner County Circuit Court, Order dated Apr. 6, 2015. The brief in that matter (Brief in Support of Motion to Dismiss Separate Defendant Michael Maggio, filed Dec. 23, 2014) authored by Ms. Hoover reflects extensive research and argument consistent with what undersigned counsel observed regarding Ms. Hoover's behind-the-scenes advocacy on this criminal case.

Further, as this Court is aware from its many years on the bench, it is not uncommon for cooperating defendants, or non-cooperating defendants who wish to resolve their cases promptly (or for many other reasons), to proceed by information and contemporaneous plea agreement. In doing so, the sole difference is that the case is not

presented to the grand jury.  The defendant's waiver of this step must be a knowing and voluntary one in every case, which is reflected by the colloquy and written waiver before the court.  In this case, the waiver of indictment merely reflected Maggio's decision to cooperate with the United States and enter into a plea agreement, as opposed to waiting for an indictment to do the same thing.

Additionally, Maggio need only compare his Plea Agreement (docket no. 4) to the United States' Sentencing Memorandum (docket no. 43) following his decision to stop cooperating to appreciate the quality of his plea/cooperation representation.  Facing a 10-year felony, Maggio's counsel negotiated an agreement with the United States which reflected the value of his early cooperation.  Had Maggio held to his cooperation agreement, the parties would have been bound by sentencing stipulations (Paragraph 5 of the Plea Agreement) resulting in an advisory Sentencing Guidelines range of 30-37 months, with the potential for a 5K or Rule 35 reduction for substantial assistance.

Instead of sticking with his original "30 to 37" month plea attorneys, Maggio obtained new counsel for his motion to withdraw his plea and sentencing.  That counsel's argument, together with Maggio's post-plea actions, resulted in approximately double (51-63 months) the sentencing guidelines range negotiated by plea counsel.  Standing in opposition to the government, Maggio and his counsel then argued themselves into a 120 month sentence.  Under yet another new attorney, on appeal, the 120 month sentence was affirmed, and the legal arguments underlying Maggio's motion to withdraw his plea (critically, the  "defense available to Mr. Maggio" that his plea counsel allegedly missed) were rejected.

Maggio has previously alleged that he pleaded guilty because the government said would prosecute his wife if he did not. Undersigned counsel can affirm that this is absolutely false. The only conversation regarding Maggio's girlfriend/wife was that plea counsel asked about immunity for her in what appeared to be an abundance of caution. The government's response was that it was unaware of any illegal conduct, and therefore could not grant immunity.

Finally, there is some irony in the fact that Maggio – then an experienced attorney and former judge – argues he was mis-advised into a guilty plea, and yet wants his law license back so that he can represent clients. Maggio says in his motion, "Mr. Maggio is trained in the law as an attorney and [sic] licensed on March 28, 1990. He served his community for more than 25 years. Where other defendants may be able to continued their career after a prison sentence, i.e., plumber, contractor, etc., without this Court's intervention, Mr. Maggio has little chance of returning to his chosen profession as an attorney." Maggio Motion at 15 (docket 93). As the Court found at the plea hearing, Maggio entered into the plea and Information in this case "voluntarily with full knowledge of the facts, his rights, and the possible consequences." Plea Tr. at 23.

**V.    Maggio's Comparative Guilt and Consequences**

Maggio pleaded guilty to bribery because he was guilty of taking a bribe. He stated this, in meetings with the government, under oath during his plea hearing on January 9, 2015, when testifying before the grand jury on January 10, 2021 (referenced during a subsequent public proceeding), and during trial testimony of a putative co-defendant on July 28, 2021. On those occasions, Maggio has admitted that he accepted

campaign contributions intending to be influenced when making a post-trial ruling regarding the $5.2 million jury verdict. As explored during testimony, Maggio struggles with using the word "bribe" because no one showed up in his chambers with a bag of cash and asked him to reduce the verdict by a specific amount. Maggio's difficulty in swallowing the word "bribe," however, does not limit his understanding of his actions or change the criminal nature of that behavior.

Maggio now complains that he is the only person to be found guilty of any charge arising out of this scheme. Maggio Motion (docket no. 93), at 3, 13-14. Of course, without Maggio this crime could never have occurred; as the judge, only Maggio had the power to alter the verdict. As the United States has maintained throughout the proceedings following Maggio's guilty plea, Maggio freely admitted that he took a bribe that influenced his decision in a case before him. The United States called Maggio to testify truthfully at the trial of his putative codefendant in order to provide context for corroborating evidence. It should come as a surprise to no one that Maggio's choices throughout time to admit-deny-admit-deny-admit the bribe impacted his credibility and the value of his testimony. If Maggio believes other individuals were not held to account for this bribery scheme, he should look first in the mirror.

Finally, Maggio falsely states that the United States "declared . . . the innocence" of his putative co-defendant by electing not to re-try that case. Maggio is wrong. It would not be appropriate for the United States to comment here on the careful and complex considerations that went in to the decision to dismiss that case.

## V. Conclusion

Maggio's case is over. He was justly convicted, and he has received all judicial review available to him. In the words of the Eighth Circuit, affirming this Court, "the fact Maggio acted corruptly while performing his core duty as a judge presiding over a case—a context in which, even more than other high-level and elected officials, he assumed a mantle of impartiality and sat as a personification of "the system"—set his crime apart and made it significantly worse." *Maggio*, 862 F.3d at 648.

WHEREFORE, the United States respectfully requests that this Court deny Maggio's Motion to Dismiss the Information and Case *Nunc Pro Tunc* (docket no. 93).

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney

By: JULIE PETERS
AR Bar No. 2000109
Assistant United States Attorney
P. O. Box 1229
Little Rock, Arkansas 72203
501-340-2600
julie.peters@usdoj.gov